Good morning. United States v. Gee. Go ahead. Mumble that. Gee. Good morning, Judge Caney, Judge Bauer, and Judge Lilley. You heard Judge Caney blur over the defendant's name. Go ahead. Yes. I am here on behalf of Zenon Grzegorczyk. I have a law clerk, which we refer to as Gee as well, or Dee as well. Your Honor, we're here today. There are three issues before the court I'm going to specifically address to. The first of which is the district court's failure to adequately consider the defendant's principal arguments in mitigation, which centered around two aspects of his mental health status and examination. The district court really gave short shrift to this, and all we have in the record is approximately one sentence, which is found at the transcript, page 33 and 34, when the judge is addressing his history and characteristics. And basically what the judge says is that, although when you're looking at his characteristics, yes, the alcoholism and personality apparently made him, obviously made him willing to try to have extremely, to have people murdered, so that's something I need to consider. And that's the long and short of it. And what we had at issue in this case was two lengthy psychological reports that dealt with two separate issues. First of all, his psychological state at the time that the offense occurred, in which we had a psychologist who said that he had a variety of issues, including certain borderline personality traits. He also suffered from anxiety, depression, and very serious substance abuse issues. Subsequently, while he was in custody at the MCC, he suffered an attempted sexual assault. And as a result of that, there was another report and evaluation done. And he suffered from post-traumatic stress disorder in addition to his depression and anxiety, for which he was then, at that time, receiving some medication. So the first doctor also suggested that Mr. Gregorczyk, who had no criminal background, who had become a citizen of the United States, who had immigrated here at a young age, and who otherwise had lived a law-abiding and exemplary life, was not the kind of person who should be viewed as somebody likely to commit a crime again, but that it should be taken into consideration the circumstances at the time and his need for treatment. Similarly, with respect to the assault that he suffered, the argument with respect to that presented to the district court was that this was going to make the time that he was going to serve significantly more difficult for him than it would for the ordinary defendant. Once you've already been traumatized by an assault while you're in custody awaiting the resolution of your case, it has a tremendous impact on your ability to deal with other situations or feel safe or protected while you're going to be in custody for the remainder of the time that you have to serve. And those are two sets of very serious issues that were not adequately taken into consideration by the district court when she was deciding what she should do in this case. Particularly in this particular case where the sentencing guidelines called for a sentence of roughly 17 and a half years, 211 months. Mr. Gagorczyk is a man who was 51 years old at the time that he was sentenced. So we're talking about a very serious period of time that he was facing, never having been in prison before and having a whole panoply of psychological issues for which it was not at all certain that he was going to be adequately treated and one set of which arose while he was in pre-trial custody in the first instance. So all of those things suggested and the psychologist suggested that treatment for his mental health issues, which were at the center of his conduct in this case, would be the best way to deal with what happened here. And certainly the longer you keep, as we presented to the court, studies which show that the longer a person is imprisoned, the less benefit they have in terms of getting out and being able to reconnect with their family and with their life circumstances and the less chance they have of being able to do well. Well, there's certain opportunities in prison to receive the kind of counseling and treatments you're talking about. That depends on where a person is sent, Your Honor. Well, I know. It's up to the Bureau of Prisons to determine that. That's correct. And in fact, Mr. Gagorczyk is in Elkton, Ohio, and the ability for him to receive the kind of treatment he needs is rather limited. Also, the statute 3582 is pretty clear in stating specifically that rehabilitation and correction are not the purpose of imprisonment and that this is something that the judge should take into context or into consideration when deciding, in the first instance, whether to imprison someone, and in the second instance, how long to imprison them. Well, the point, I guess, is there are places like Springfield, Missouri, and other institutions in the federal system in the Midwest which deal with the people who have psychiatric and psychological problems. If the Bureau of Prisons determines that's indeed what it is. That's correct, Your Honor, and unfortunately, in Mr. Gagorczyk's case, that has not been a determination that the Bureau of Prisons has made, despite the evidence that was presented to the court and was included in the pre-sentence investigation report and to which the Bureau of Prisons itself would have access. So, in the first instance, the argument here before the court is that the district court did not give sufficient or much of any consideration at all to these issues when deciding what the appropriate sentence would be in this case. And secondly, that the sentence itself is substantively unreasonable, and it's unreasonable... There was no effort or no discussion of not guilty by reason of insanity? No, there wasn't, Judge, because he was evaluated for competency and... He was evaluated. Right, and he was found to be competent. Where did he go for that? He was evaluated here, in this district, but he... He didn't go to an institute in Springfield? No, he had an outside psychologist perform that evaluation. In other words, he procured, or somebody on his behalf procured that. He didn't go to an institution, to the federal government to have an... That's correct. So, with respect to the second issue surrounding his sentence, that it's substantively unreasonable, when we look at the question of his age, his lack of background, and the particularity of the kind of treatment of which he is in need, a sentence of 17 1⁄2 years for someone at his age is excessive and will not afford him the opportunity for either rehabilitation or correction that he needs and that should have been considered under the particular circumstances of this case. So, Your Honor, I see I'm running out of time. I'd like to reserve for rebuttal. Because, just to make sure I got his sentence right, he had... The range was 151 months to 188 months. He got 151 months plus the 60 months consecutive. That's correct, Judge. If there are no other questions, I'll reserve. Ms. Richardson. May I please support, counsel? My name is Tabara Richardson, and I am here on behalf of the United States. I'll start by addressing the issue that counsel addressed. In this case, the district court did consider the defendant's arguments in mitigation, and that is evident based on what the district court explicitly stated when giving its sentence. When looking at the record and the transcript from the sentencing hearing, first we see that the district court engaged in a dialogue with defense counsel  Specifically, the defendant stated that, and I quote, I'm sure that you've read through everything, including the letters and the report of Dr. Ostroff and his own doctors. The court interrupts or responds to defense counsel by stating, doesn't Dr. Ostroff say that he really is a person who, when he gets angry and feels frustrated, that he essentially becomes out of control. And here the district court is referencing the defendant's sentencing memorandum at Exhibit 7, where Dr. Ostroff's report specifically states, and I quote, that the defendant may be easily angered and frustrated. He may feel justified in getting even. So here we have a dialogue, and it goes on, where the district court is specifically talking to defense counsel and addressing how the defendant's mental health plays into the considerations here. And defense counsel specifically states to the court, and I quote, but I do think that that points to the need for mental health treatment. It does not point to the need for imprisonment. The court responds, quote, well, unless you try to have people killed. And then defense counsel goes on, and I quote, and this is at the sentencing transcript, page 31, we don't have to and we shouldn't be trying to solve every social and mental health problem we have by incarceration. So here we have a dialogue where the court is explicitly considering the defendant's argument with regard to his mental health. And then when we go to the district court's analysis of the Section 3553A factors, again, the district court not only gives the statement that defendant has or appellate has quoted, but in addition, beyond stating, and I quote, the alcoholism and personality apparently made him, obviously made him willing to try to have extremely, to have people murdered, so that's something I need to consider. So here the district court is directly addressing the report with regard to the defendant's borderline personality traits. The doctor's report or recommendation here was, as counsel pointed out, his own psychiatrist. In other words, it wasn't the government. He wasn't sent away for an evaluation, is what I'm saying. The defendant was evaluated by his own doctor, Dr. Ostroff, and that doctor found— That was my one, yes. Yes. But the court doesn't stop there. The court goes on, and the court states that, so I have to look at this. I do understand that he, from the letters and all, that it would appear that he isn't feeling feelings that he was feeling that led him to this, that he could be a very good person and that he has helped people. So here, again, we have the district court explicitly and directly addressing the defendant's argument and mitigation with regard to how his mental health would make him less culpable because of his state of mind at the time of the offense. The district court does go on to state that, despite the defendant's argument and mitigation, that the district court has to consider the other factors under Section 3553A, for example, the seriousness of the offense, the need to promote respect for the law. And so what the defendant's argument boils down to is the fact that the defendant disagrees with the weight that the district court gave his arguments in mitigation. However, that is within the discretion of the district court with regard to how it weighs the factors in mitigation. And the district court goes on to say, and I quote, hopefully a sentence can provide him with needed medical care, but I do need to impose a sentence that's sufficient but not greater than necessary. And so here, the district court explicitly and directly addresses the defendant's argument with regard to the defendant's mental health and did not commit any procedural error with regard to sentencing the defendant, to address the defendant's... mental problems that the defendant was having. That's correct, Your Honor, and that was well within the district court's discretion and the district court didn't commit any procedural error with regard to considering the defendant's arguments in mitigation. In addition, the district court did not commit any substantive error. Here, the defendant was sentenced at the low end of the guidelines calculation and the district court gives specific reasons for why it was imposing the sentence despite the defendant's argument in mitigation. The district court stated, and I quote, I need for that sentence to reflect the seriousness of it and promote respect for the law and provide just punishment and adequate deterrence and to protect the public from further crimes. And the district court goes on, but the defendant, in spite of what you say, referring to the defense counsel, and I quote, I'm not convinced that there isn't a need here for that and certainly the other factors are always, and certainly here are the factors. Hopefully a sentence can provide him with needed medical care, but I do need to impose a sentence that's sufficient but not greater than necessary. What was the sentence again? The sentence on count three was 151 months. There was a consecutive sentence for count four, the minimum sentence of 60 months, which gave a total of 60 months on count four, which provided for a total of 211 months. In addition- And the defense counsel had argued for, at some point during the sentencing, said that 10 years would be sufficient. That's correct, Your Honor. The defendant asked the court for 10 years, including the mandatory 60-month sentence for count four. And so essentially the defendant was asking that the district court sentence the defendant to 60 months on count three. And there were three intended victims, correct? There were actually six- At least those were the others that got added? Correct, Your Honor. At the last meeting, the defendant showed additional photographs of individuals who he wanted killed. There was a total of at least six individuals who the defendant wanted to be burned alive, and that's not including the witnesses that he instructed them to get rid of because there were to be no witnesses. Further, the district court, when giving its sentence, stated to the defendant, you shall participate in a mental health treatment program, which may include the use of prescription medications at the discretion of the probation officer. Here- Well, these conditions for release, it seems to me, I think, the Northern District of Illinois has in some cases just said we'll send it all back. Do you agree in this case that part of them may have been addressed by the district judge, but part of them weren't? He talked about standard conditions of supervised release. I apologize. Your question, I want to make sure- We've had problems with conditions of supervised release. Do you understand that in the past? Yes, Your Honor. And one of the things your office has done in other cases has said we'll agree to have it all sent back to have the judge reevaluate the conditions of release as they are related to this particular defendant. Some of these certainly are related to the defendant, like the one you just described, but there are other ones that were referred to as standard conditions, which there are no necessary direct relationship to the defendant. That's correct, Your Honor. So I'm asking to see whether the government is willing to consent to have all of it sent back for the district judge to reevaluate conditions for supervised release as a whole. No, Your Honor. Only because in this case the district court heard the arguments- You can ask my question. You don't have to. And with regard to the defendant, whether his sentence was substantively unreasonable, here where the defendant laid out how he wanted to have six people murdered, gave explicit directions for how he wanted those people to be murdered, and when the undercover agents informed him that burning someone alive is a horrible way to die, he indicated that that's why he wanted it to happen, and but for him needing to have an alibi, he would have done it himself. Based on all of the facts presented to the court and the record, and looking at directly what the district court stated with regard to the defendant's arguments and mitigation, the district court committed no error when sentencing the defendant, neither substantively or procedurally. And unless there are any other questions for the reasons stated here today and in our brief, we respectfully request that this court affirm the defendant's convictions and sentence. Thank you. Thank you. How much time? You have two minutes. Your Honors, with respect to the quotations with regard to the district court's interpretation of what the district court said, Mr. Grigorczyk being out of control, that also indicated that she had not carefully looked at the report that was prepared for her, because the doctor concluded that this was not a person who should be treated as a career criminal and as someone who could benefit greatly from treatment. You cannot tell from what the district court said that she gave adequate consideration to these arguments or that she considered them at all apart from the alcoholism. With respect to the quotation about the letters, that refers to she spent more time on letters that she received from friends and family members, and that was the reference where the court says from the letters and all, that it would appear he isn't feeling the feelings that he was feeling that led him to do this and that he could be a good person and he helped people. That was all information that was provided to the court through letters from his family members and friends, including his ex-wife and son. So for the reason that the court did not adequately address his mental health issues or the fact that the impact of the assault that he suffered in the NCC, we'd ask this court to remand the case for resentencing. Thank you. Thanks to both counsel. The case is taken under advisement.